ESTATE OF PAUL E. BUTSCHER, DECEASED, ALBUQUERQUE NATIONAL BANK, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Butscher v. Commissioner
Docket No. 1754-73.
United States Tax Court
T.C. Memo 1975-224; 1975 Tax Ct. Memo LEXIS 150; 34 T.C.M. (CCH) 982; T.C.M. (RIA) 750224; July 8, 1975, Filed *150 Stanley C. Sager, for the petitioner. John D. Moats, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in the Federal estate tax of petitioner in the amount of $81,721.01. The fair market value of certain ranch land has been resolved by the parties. The only issue for our decision is the date of death fair market value of the Fiesta Lanes Bowling Alley, Albuquerque, New Mexico. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Albuquerque National Bank is the duly appointed executor of the estate of Paul E. Butscher, deceased, and its principal place of business at the time this petition was filed was in Albuquerque, New Mexico. Paul E. Butscher died on October 20, 1968, and the Federal estate tax return for his estate was filed with the District Director of Internal Revenue, Albuquerque, New Mexico. On the date of decedent's death, he owned certain real property known as Fiesta Lanes Bowling Alley which consisted of 3.5 acres of commercial property located in the Northeast Heights area of Albuquerque, *151 New Mexico. The subject property encompasses approximately 154,299 square feet and is rectangular. The site has approximately 515 frontage feet on both San Pedro Drive and Arizona Street, and 305 frontage feet on Menaul Boulevard. The remaining side of the lot was occupied by business buildings which were also owned by the decedent. Menaul Boulevard is a six-lane, divided thoroughfare which connects with Albuquerque's interstate highway system and has been the subject of active commercial development. The property was improved by a structure occupying 37,324 square feet and known as Fiesta Lanes Bowling Alley with the remaining 106,975 square feet used for parking. On the date of decedent's death, the property in question was subject to a lease dated May 10, 1961, with a primary term of 15 years and options for two 5-year renewals at a negotiated rental. The lease required that all of the parking space available to the lessee of Fiesta Lanes, and subject to valuation herein, was to be shared with the business buildings bordering the subject land. The Fiesta Lanes structure was zoned C-2 (commercial, retail) and the entire parking lot portion of the site was zoned P-1 (parking) at *152 decedent's death. The site has approximately 310 on-site parking spaces. The zoning regulations required a minimum of four parking spaces for each alley or lane of which Fiesta Lanes had 40. The commercial retail buildings which shared the parking spaces occupied 11,164 square feet of net rentable space and minimum zoning required one space per 200 square feet of net rentable space. A parking space was defined in the zoning regulations as a 170-square foot area (8.5 feet by 20 feet). The parties agree that capitalization of income with a reversionary value for the land and improvements was the proper method of valuation. The valuation computed on the estate tax return and the valuation determined in the statutory notice of deficiency are as follows: Estate Tax Return Statutory
&
Respondent's Notice of
Petitioner's Appraisal
Appraisal Deficiency
GROSS ANTICIPATED LEASE INCOME
$ 43,200
$ 43,200
Less: Expenses
(11,200)
(11,200)
NET ANTICIPATED ANNUAL INCOME
32,000
32,000
Capitalization Rate? (Inwood Coefficient 7%--10 yrs.)
x 7.024
(Inwood Coefficient 8%--8 yrs.)
x 5.783
INCOME STREAM VALUATION
$224,768
$185,056
Plus--
REVERSIONARY VALUE: Land… (.5083 x 230,000)
116,909
$255,000
Improvements
0
(.758 x $330,000) 250,000
.537 x $505,000
271,185
$341,677
$456,241
VALUE
$340,000
$455,000
$495,000
*153 The improvements were constructed specifically for use as a bowling alley with the superstructure composed of reinforced concrete and the concrete floor varied from the ground level. As of the date of construction and the date of decedent's death, the highest and best use of the property in terms of value was that of a bowling alley but, due to commercial development, the projected highest and best use at the end of the primary term of the lease was that of a commercialretail building. A conversion of the building at the end of the leasehold would have required an expenditure of approximately $200,000 at the date of death. ULTIMATE FINDING OF FACT The fair market value of real property known as Fiesta Lanes Bowling Alley as of October 20, 1968, was $340,000. OPINION The question involved is solely one of valuation and both parties agree that an income analysis or capitalization of income approach with a reversionary value for the fee simple is the appropriate method. The disparity in values, apart from nominal differences in present value coefficients, stems from the value to be attached to the reversionary interest. Respondent disagrees with petitioner as to two items; specifically, *154 he urges that a value should be attached to "excess land" derived from the parking area and he contends that a reversionary value should be attached to the improvements. Petitioner offered detailed testimony of the supervisor of the original construction concerning the specialized nature of the building and itemized estimated costs of conversion of $200,000. We believe petitioner has carried his burden. . Respondent concedes that costs would be incurred to convert the structure to a more valuable use but argues that the costs would not exceed $20,000. Respondent urges that many of the costs estimated by petitioner would be absorbed by a new tenant taking possession at the end of the present leasehold. We agree with petitioner that it is somewhat immaterial whether the costs of conversion will be absorbed by the tenant or the owner of the fee. In any event, such costs will be reflected in a negotiated rental which affects the present value of the improvements. Further, although respondent's appraiser at trial conceded a cost of $20,000 to convert the improvements, we are not convinced such facts were considered *155 in his valuation of the improvements. Respondent's appraisal under the cost analysis method, which we reject as an inferior method of valuation under the circumstances, considered the conversion costs by increasing the depreciation percentage. The depreciation percentage and, consequently, the costs to convert, were apparently not applied in determining the reversionary value of the improvements under the accepted income capitalization method. Respondent's appraisal also concludes that 50,000 square feet of excess land from the parking area were available for further improvements and accordingly valued at $80,000. We agree that based upon zoning requirements the subject site has an excess of approximately 95 spaces which would constitute at least an excess of 16,000 square feet. But, we have not been shown that the zoning requirements set forth anything other than minimal requirements nor does the evidence show that Fiesta Lanes and the adjoining commercial establishments did not fully utilize the space available. Petitioner, on the other hand, has produced testimony of a local realtor specializing in commercial investment properties who dismissed the possibility of further development *156 due to the resultant visual obstructions to the Fiesta Lanes improvement. Accordingly, we accept petitioner's valuation as being supported by the evidence and, due to conceded adjustments respecting the ranch land, Decision will be entered under Rule 155.